# AIELLO CANNICK
Your rights • Our business

## MEMO ENDORSED

Robert J. Aiello
Deveraux L. Cannick
———
Jennifer Arditi

**Of Counsel**

John S. Esposito
Anthony J. Rattoballi

*69-06 Grand Avenue*
*Maspeth, New York 11378*
*(718) 426-0444, Fax (718) 803-9764*
*Email: info@aiellocannick.com*

March 4, 2021

**VIA ECF**
Honorable Kenneth M. Karas
United States District Court
Southern District of New York
300 Quarropas Street
New York, New York Y 10601

      **Re:    United States v. Edwin Ceballos**
              **Case No.: 15-Cr-00176-(KMK)**

Dear Judge Karas:

      The defendant, Edwin Ceballos, through the undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), to grant compassionate release and reduce his sentence to time served. Alternatively, Mr. Ceballos respectfully requests, pursuant to 18 U.S.C. § 3624(c)(2), that he serve the remainder of his sentence in home confinement with the previously imposed term of supervised released to commence upon completion. The spiraling coronavirus pandemic and its variants (United Kingdom, South Africa and Brazil) are wreaking havoc all over the world. Public health experts and policymakers recognize that they are especially dangerous in the confines of correctional institutions. Mr. Ceballos' confinement at Orange County Jail and his medical issue make him susceptible to contracting and suffering complications from this virus.

      The spread of COVID-19 at Orange County Jail and its administration's inability to protect prisoners in its care, combined with Mr. Ceballos health issue, constitute extraordinary and compelling circumstances.

1

## BACKGROUND

On or about March 25th, 2015, Edwin Ceballos was arrested by Federal authorities and charged with Conspiracy to Distribute and Possession with Intent to Distribute Oxycodone and Heroin. Mr. Ceballos was ordered detained. He was detained during the pendency of his case. On January 5th, 2016, Mr. Ceballos pleaded guilty as charged. On May 11th, 2016, Your Honor sentenced him to a term of thirty-nine (39) months imprisonment followed by three (3) years supervised release. Mr. Ceballos was initially released in April 11th, 2018. His term of supervised release was revoked for a violation of New York State Narcotics laws. He was ultimately remanded and sentenced on January 28th, 2020 to timed served (six (6) months and seven (7) days). He was restored to supervised released. On May 14th, 2020, he was charged with several new violations. A warrant was issued for his arrest. He was ultimately arrested on October 8th, 2020. On October 19th, 2020, he admitted guilt to violations 3 and 4 and was sentenced to eleven (11) months imprisonment.

As of March 4th, 2021, Mr. Ceballos, who is incarcerated at Orange County Jail, will have completed approximately four and a half (4 ½) months of his eleven (11) months sentence.

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed except" as provided by statute. As relevant here:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . .and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Id. The policy statement, which appears at Section 1B1.13 of the Guidelines, provides that a reduction of sentence is permitted if: "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3). The Application Notes of §

2

1B1.13, in turn, describe multiple ways that a defendant can show an "extraordinary and compelling reason":

(A) Medical Condition of the Defendant —

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is —

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, Application Note 1.

The defendant bears the burden of proving "extraordinary and compelling reasons" exist under the above criteria to justify early release. See United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## EXHAUSTION

Mr. Ceballos is not at a BOP facility. He is housed at Orange County Jail so there is not a BOP official for him to address an application for compassionate release. In cases where the defendant was incarcerated either in a local jail or privately run prison, the exhaustion requirement has been waived or has not been required by the Courts. See United States v. Barasus, 18 CR. 736-04 (NSR) (SDNY, July 6, 2020), and United States v. Sanchez, 18 CR. 833 (VSB) (SDNY, May 12, 2020).

## COMPASSIONATE RELEASE

The new strain of Coronavirus which causes COVID-19 has infected over 115 million people leading to at least 2.56 million deaths worldwide with the United States now leading the world with over 28.1 million confirmed cases and over 4.7 hundred thousand plus deaths. On

3

March 11th, 2020, the World Health Organization officially classified COVID-19 as a pandemic. New York Governor, Andrew Cuomo, declared a State of Emergency on March 7th, 2020 and Former President Trump declared a State of Emergency for the Nation on March 13th, 2020.

Orange County Jail is located in the State of New York. As of March 4th, 2021, in the State of New York over 1.66 million individuals have tested positive for the Coronavirus. Over 47,345 New Yorkers have died as result of the virus. The State of New York is still in the midst of a spiraling pandemic. The new variant strains have created an even greater risk. Given their aggressive purported virulent nature, it would be devastating if they were to get into the population of Orange County Jail or any BOP facility.

## ARGUMENT

Mr. Ceballos' confinement in Orange County Jail in the midst of a pandemic that is ravaging inmates and staff, coupled with his medical issue, make him particularly susceptible to sickness and complications should he contract the virus. These combined issues constitute an extraordinary and compelling reason for his release under 18 U.S.C. § 3582 (c)(1)(A)(i).

While there still many unknowns about the virus, one thing is clear: COVID-19 is deadly and highly contagious. The CDC advises that the Coronavirus is "spread mainly from person-to-person...[b]etween people who are in close contact with one another...[t]hrough respiratory droplets produced when an infected person coughs or sneezes." The droplets land on the mouths or noses or can be inhaled into the lungs of people who are asymptomatic. There is no known treatment, vaccine, or cure for COVID-19 and citizens are warned daily to practice social distancing and to take precautions when exposed to other individuals, even on a limited basis. The CDC had advised that individuals of any age who have serious underlying medical conditions might be at a higher risk for severe illness from COVID-19.

COVID-19 cases have been spreading rapidly at multiple BOP facilities, and containment has proved to be impossible. Bureau of Prisons staff come and go every day, and although efforts are made to limit inmates' transport and transfer, due to the communal nature of the living arrangements and the inability of inmates to self-isolate and regularly wash and sanitize their hands, correctional facilities pose a unique risk to both inmates and staff.[1]

On March 27th, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of

---

[1] While other inmates face the same inability to follow the CDC's guidelines and protect themselves, not all inmates have Mr. Ceballos health ailments and do not encounter the same risk.

4

their sentences. Leading public health experts made a similar request, as did members of Congress. On April 3rd, 2020, Attorney General Barr issued a memorandum directing the BOP to move vulnerable prisoners into home confinement with due "dispatch". On April 10th, 2020, members of Congress wrote again to Attorney General Barr, noting that several inmates had since died in BOP custody many who had pre-existing conditions.[2]

Judges throughout the country are responding to this crisis and heeding advice of medical experts by releasing vulnerable inmates from overcrowded facilities. I am sure that this Court is aware of the many instances of compassionate release being ordered in this District as the string-cites of those many cases is now as long as the many briefs requesting release.

Mr. Ceballos is a medically vulnerable inmate for whom compassionate release is appropriate. As noted in his medical records (See Exhibit A, Filed Under Seal), Mr. Ceballos is an asthmatic and is obese. Specifically, he weighs 220 lbs. and is 5'10". His BMI is 31.57. His healthy weight is 149-183 lbs. It should also be noted that he was a smoker. As a result of his asthmatic condition, he has often been prescribed a nebulizer.

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in 18 U.S.C. § 3553 (a) factors.

Under all of the circumstances in this case, the Court should conclude that the time Mr. Ceballos has already served is sufficient to satisfy the purposes of sentencing.

Here, the overriding factor under § 3553 that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents to Mr. Ceballos health and safety. The purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness. In fact, the Eight Amendment's prohibition on cruel and unusual punishment includes unreasonable exposure to dangerous conditions in custody. Helling v. McKinney, 509 U.S. 25, 28 (1993); see also Wallis v. Baldwin, 70 F.3d 1074 (9th Cir. 1995) (applying Helling to exposure to asbestos); Brown v. Mitchell, 327 F.Supp. 2d 615, 650 (E.D. Va. July 28, 2004) (applying Helling to "contagious diseases caused by overcrowding conditions").

Mr. Ceballos has a release plan. He will reside with his parents. They live in an apartment in New York City. This is where he resided prior to his incarceration. Unfortunately, his mother was afflicted with COVID-19 several months ago. She now suffers with its aftermath. It has left

---

[2] BOP employees have expressed similar concerns and fears about the dangers of COVID-19 and the inadequacy of measures to protect them. On March 31st, 2020, BOP employees filed a complaint with the Occupational Safety and Health Administration, alleging that federal prisoners are "proliferating the spread" of COVID-19 and that conditions at BOP facilities nationwide place them in "imminent danger". The union listed 100 of 122 facilities nationwide with alleged safety or health hazards. The complaint alleges that the BOP has not taken adequate safety precautions to mitigate the spread of COVID-19.

her with many ailments. She is not able to care for herself. Aside from trying to find employment and attending AA meetings, Mr. Ceballos will assist in rendering her care.

## CONCLUSION

The CDC has determined that persons of any age suffering with the following conditions are at an increased risk of severe illness from COVID-19: Chronic kidney disease, COPD (chronic obstructive pulmonary disease), immunocompromised state (weakened immune system) from solid organ transplant, obesity (body mass index [BMI] of 30 or higher), serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies, sickle cell disease, Type 2 diabetes mellitus.

As noted previously, Mr. Ceballos is obese and suffers from Asthma. His medical records indicate a number of hospitalizations for his asthmatic condition (See Exhibit A, filed under seal). The more underlying conditions someone has, the greater the risk is for illnesses from COVID-19. The CDC has determined that such condition makes him at an increased risk for severe illness from COVID-19. Clearly, Mr. Ceballos' medical condition satisfies the mandates of policy statement which appears at 1B1.13 of the Guidelines. Mr. Ceballos is suffering from serious medical conditions.

Edwin Ceballos is a severely ill man. His vulnerability to contracting and potentially succumbing to this deadly disease constitutes "extraordinary and compelling reasons" to grant compassionate release.

For the foregoing reasons, Mr. Ceballos respectfully requests that the Court grants his motion for compassionate release.

Respectfully submitted,

Deveraux L. Cannick

DLC/ad

Application for compassionate release, under 18 U.S.C. Section 3582, is denied. Mr. Ceballos may have asthma and be obese, but these facts alone do not carry the day, even if they establish extraordinary and compelling circumstances that might support release. The Section 3553(a) factors far outweigh these circumstances. First, contrary to what Mr. Ceballos claims, the pandemic and in particular its impact on prisons was considered by the Court when it imposed the sentence it did on Mr. Ceballos. Among other things, the Court noted that it was hypocritical of Mr. Ceballos to seek a break based on the coronavirus, given his behavior exhibited a reckless disregard for the virus when he was violating his supervised release terms. While New York was on a near total lockdown, Mr. Ceballos was drinking and driving with no apparent fear of the virus. Moreover, to release Mr. Ceballos early would thoroughly undermine the reasons for the sentence, which was both to promote specific and general deterrence and respect for the law. This was not Mr. Ceballos' first violation or his first term of imprisonment, thus making him an obvious risk of recidivism. Yes, the virus is dangerous to people with Mr. Ceballos' medical condition, but Mr. Ceballos could have avoided both imprisonment and contracting the virus if he had honored his obligations as a supervisee.

So Ordered.          4/19/21

6